**Phillip LINDLEY and Maroline Lindley, Appellants,**

v.

**David JOHNSON, M.D., John P. Andrews, M.D., and Mother Frances Hospital, Appellees.**

No. 12–94–00228–CV.

Court of Appeals of Texas, Tyler.

Nov. 26, 1996.

Rehearing Overruled Jan. 6, 1997.

Stacy R. Obenhaus, Dallas, for appellant.

J. Truscott Jones, Kevin J. Keith, Dallas, Michael E. Starr, Gregory D. Smith, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

*OPINION ON MOTION*
*FOR REHEARING*

HOLCOMB, Justice.

On August 30, 1996, this Court delivered an opinion in this case. Appellees, David Johnson, M.D., John Andrews, M.D., and Mother Frances Hospital of Tyler, Texas filed a Motion for Rehearing. After carefully considering Appellees' motion, we overrule such motion, but withdraw our previous opinion and substitute the following clarifying opinion therefor.

Appellants Phillip and Maroline Lindley (the "Lindleys") appeal the trial court's grant of an instructed verdict in favor of Appellees David Johnson, M.D., John Andrews, M.D., and Mother Frances Hospital of Tyler, Texas. The Lindleys present five points of error, primarily focusing on the trial court's decision to strike their expert witnesses. We will **reverse and remand.**

On October 7, 1992, the Lindleys filed suit, alleging that David Johnson, M.D. ("Johnson"), John Andrews, M.D. ("Andrews"), and Mother Frances Hospital (the "Hospital"), sometimes collectively referred to herein as "Defendants," were negligent in their diagnosis and treatment of Maroline Lindley. On October 4, 1993, the trial court entered a scheduling order (the "Order"), which required the Lindleys to designate their expert witnesses by December 15, 1993. The Order specifically stated, "[n]o additional experts will be permitted to testify except for good cause shown." The Lindleys did not designate their experts until February 15, 1994. Subsequently, Johnson, Andrews, and the Hospital moved to strike the Lindleys' experts because the Lindleys had not timely designated their experts, and the trial was scheduled for April 25, 1994. On March 4, 1994, the Lindleys responded to the Defendants' motions to strike and requested a hearing. The trial court did not conduct a

hearing, but granted Defendants' motions to strike on March 15, 1994. The Lindleys proceeded to trial, but did not call any medical experts as witnesses. When the Lindleys rested, Defendants moved for an instructed verdict on the ground that the Lindleys had not presented the required expert medical testimony in support of their claim of medical malpractice. The trial court granted Defendants' motions for instructed verdict.

During the period of time referenced above, the Lindleys changed attorneys and were, at times, *pro se.* John Sloan originally represented the Lindleys as their attorney and filed their lawsuit on October 7, 1992. Subsequently, Sloan moved the court to allow him to withdraw from representation of the Lindleys. On February 15, 1993, the trial court allowed Sloan to withdraw.

By May 20, 1993, the Lindleys had not yet obtained counsel to represent them in the prosecution of this suit. In a motion for continuance, the Lindleys sought a continuance of a summary judgment hearing scheduled for May 28, 1993. The trial court continued the hearing and ordered the Lindleys to inform the court on a bi-weekly basis of the status of their search for an attorney. There is no evidence that the Lindleys complied with the court's order.

On November 11, 1993, the Lindleys retained Victor Becker to represent them in this litigation. However, prior to the date the Lindleys hired Becker, Becker performed certain services for the Lindleys in regard to this case. Specifically, Becker assisted the Lindleys in preparing their response to the Defendants' summary judgment motions and forwarded to the court an Order Denying Motion for Summary Judgment, accompanied by a transmittal letter on Becker's letterhead. During October of 1993, Becker received correspondence from Johnson's counsel and the court-appointed

mediator. Becker also requested a postponement of the Lindleys' depositions, scheduled for October 20, 1993. The pretrial scheduling order of October 4, 1993 reflects that the clerk forwarded it to Becker, but Becker does not recall receiving the order.

■ In their first and third points of error, the Lindleys allege that the trial court erred in striking their expert witnesses because the Lindleys showed good cause for permitting their experts to testify and because the trial court failed to conduct a hearing on the Defendants' motions to strike. Specifically, the Lindleys claim that they had neither actual nor constructive notice of the Order, and that, because they designated their experts more than two months before the trial date, Defendants had notice of the Lindleys' designation in advance of the time required by the Texas Rules of Civil Procedure. Further, the Lindleys allege that the trial court erred in failing to conduct a hearing in compliance with Texas Rule of Civil Procedure 215.[1] We agree.

■ At the outset, we note that a trial court is empowered to establish pretrial schedules to govern the course of litigation. TEX.R.CIV.P. 166. When a trial court's pretrial scheduling order changes the deadlines set forth in a procedural rule, the trial court's order prevails. *See ForScan Corp. v. Dresser Indus., Inc.,* 789 S.W.2d 389, 393 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (trial court's pretrial order which established deadline for pleading amendments prevailed over deadline in procedural rule). The trial court's control of pretrial activities is discretionary. *Loffland Bros. Co. v. Downey,* 822 S.W.2d 249, 250 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding). "A party is entitled to notice of a docket control order either by the presence of the order in the court's file or, in the absence of such a

---

1. In their second point of error, the Lindleys contend that the trial court abused its discretion by striking their witnesses because the court's action amounted to a "death penalty" sanction, which was unwarranted based on the Texas Supreme Court's standards set forth in *TransAmerican Natural Gas v. Powell,* 811 S.W.2d 913 (Tex. 1991). Because of our disposition of the Lindleys' other points of error, we do not reach this issue. However, we note that, in a similar medical malpractice case, the Fourteenth Court of Appeals held that a trial court's refusal to allow a party to designate expert witnesses constituted an impermissible "death penalty" sanction. *Smith v. Nguyen,* 855 S.W.2d 263, 266 (Tex. App.—Houston [14th Dist.] 1993, writ denied). The court reasoned that the exclusion of medical experts in a medical malpractice case prevented one party from presenting the merits of its claim, and that such sanction was unwarranted.

filing, by service pursuant to Rule 21a." *Smith v. Nguyen*, 855 S.W.2d 263, 266 (Tex. App.—Houston [14th Dist.] 1993, writ denied). Both parties to a lawsuit and their attorneys are charged by law with notice of all orders and judgments that are rendered therein. *Pentikis v. Texas Elec. Serv. Co.*, 470 S.W.2d 387, 390 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.).

▄▄▄ Texas Rule of Civil Procedure 215(5) governs sanctions for failure to respond to or supplement discovery. "The purpose of Rule 215(5) is to prevent trial by ambush, not to create a trap for the unwary." *Morris v. Short*, 902 S.W.2d 566, 571 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Failure of a party to supplement discovery results in the automatic exclusion of unidentified witnesses. *Haryanto v. Saeed*, 860 S.W.2d 913, 924 (Tex.App.—Houston [14th Dist.] 1993, writ denied); Tex.R.Civ.P. 215(5). However, the testimony of an unidentified witness is admissible if the trial court finds that good cause exists for allowing the witness to testify. *Haryanto*, 860 S.W.2d at 924. The determination of good cause is within the sound discretion of the trial court and can only be set aside for an abuse of discretion. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex.1986). To establish an abuse of discretion, the complaining party must show that the trial court's action was arbitrary and unreasonable. *Morris*, 902 S.W.2d at 571. "The trial court's discretion in determining good cause is limited to situations where one could not, in good faith and due diligence, respond or where difficult or impossible circumstances prevented one from supplementing discovery." *Foster v. Cunningham*, 825 S.W.2d 806, 808 (Tex.App.—Fort Worth 1992, writ denied) (citations omitted). The trial court's authority to impose sanctions pursuant to Rule 215(5) is subject to the requirements of notice and a hearing. Tex.R.Civ.P. 215(3).

The Order required the Lindleys to designate experts by December 15, 1993. It is undisputed that the Lindleys did not timely designate experts. Unless good cause sufficient to require admission of the evidence existed, the trial court was under a mandatory duty to strike the Lindleys' late-designated witnesses.

▄▄▄ Although the trial court impliedly found that good cause did not exist to allow the Lindleys' experts to testify, the trial court had no rational basis for such finding. The court did not hear evidence or argument on the Defendants' motions to strike. The Lindleys' lack of notice is precisely the reason for a good cause exception to mandatory exclusion. Lack of notice is an issue of constitutional significance. .

In light of the Lindleys' contentions that they had no notice of the court's Order and because they expressly requested a hearing, the trial court should have conducted a hearing before imposing sanctions. Tex.R.Civ.P. 215(3). Accordingly, we hold that the trial court abused its discretion in exercising the mandatory sanction of Rule 215(5) without conducting a hearing to determine whether sanctions were appropriate and, if so, what form of sanctions was warranted by the Lindleys' actions.

Finally, the trial court's Order does not serve the legitimate ends of discovery. As noted above, the purpose of Rule 215(5) is to prevent trial by ambush. Because the Lindleys designated their expert witnesses more than sixty days prior to trial, such untimely designation did not constitute an "ambush" of the Defendants. Therefore, we sustain the Lindleys' first and third points of error. In their remaining points of error, the Lindleys allege various other error in the trial court. However, because we have sustained their first and third points, we need not consider the Lindleys' second, fourth, and fifth points of error.

We **reverse** the judgment of the trial court **and remand** this case to the court below for **a new trial.**