# NO. 12-14-00327-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE 294TH* |
| *K. W. AND P. W.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *VAN ZANDT COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

K.W. appeals the termination of his parental rights. In two issues, he challenges the order of termination. We affirm.

### BACKGROUND

K.W. is the father of K.W.1,[1] born February 6, 2008, and P.W., born June 22, 2011. A.K. is the mother of the child and is not a party to this appeal. On October 16, 2013, the Department of Family and Protective Services (the Department) filed an original petition for protection of K.W.1 and P.W., for conservatorship, and for termination of K.W.'s parental rights. The Department was appointed temporary managing conservator of the children, and A.K., the children's mother, was appointed temporary possessory conservator with limited rights and duties. K.W. was granted limited access to the children.

At the conclusion of the trial on the merits, the trial court found, by clear and convincing evidence, that K.W. had engaged in one or more of the acts or omissions necessary to support termination of his parental rights under Section 161.001(1) of the Texas Family Code,

---

[1] The initials of the father and his oldest child are the same. Therefore, we will refer to the father as K.W. and to his oldest child as K.W.1.

subsections (D), (E), (N), (O), and (Q).  The trial court also found that termination is in the children's best interest.  Based on these findings, the trial court ordered that K.W.'s parental rights be terminated.  This appeal followed.

**REQUEST FOR JURY TRIAL**

In his first issue, K.W. argues that the trial court erred by refusing to grant his request for a jury trial.

**Applicable Law**

We review the trial court's denial of a jury demand for an abuse of discretion. ***Mercedes– Benz Credit Corp. v. Rhyne***, 925 S.W.2d 664, 666 (Tex. 1996).  We examine the entire record, and will conclude that the trial court abused its discretion only if the trial court's decision is arbitrary, unreasonable, and without reference to guiding principles.  ***Id.***

We recognize that "[t]he right to [a] jury trial is one of our most precious rights, holding 'a sacred place in English and American history.'"  ***Gen. Motors Corp. v. Gayle***, 951 S.W.2d 469, 476 (Tex. 1997).  But in a civil case, the right to a jury trial arises only when a party files a written jury request not less than thirty days in advance of the date set for trial and pays the jury fee. TEX. R. CIV. P. 216.  And when a trial court's pretrial scheduling order changes the deadlines set forth in a procedural rule, the trial court's order prevails.  ***Lindley v. Johnson***, 936 S.W.2d 53, 55 (Tex. App.—Tyler 1996, writ denied) (citing ***ForScan Corp. v. Dresser Indus., Inc***., 789 S.W.2d 389, 393 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (trial court's pretrial order that established deadline for pleading amendments prevailed over deadline in procedural rule)).  A trial court does not abuse its discretion by denying a jury trial when there was no timely request. ***Huddle v. Huddle***, 696 S.W.2d 895, 895 (Tex. 1985); *see* ***Martin v. Black***, 909 S.W.2d 192, 197 (Tex. App.—Houston [14th Dist.] 1995, writ denied).  Texas courts have held that a trial court "should accord the right to jury trial if it can be done without interfering with the court's docket, delaying the trial, or injuring the opposing party." ***Gayle***, 951 S.W.2d at 476.

**Analysis**

In this case, the trial court entered a scheduling order in November 2013, which stated that a party must submit a written jury request "no less than sixty days prior to the initial date set for trial."  At the permanency hearing on April 10, 2014, the trial court set the case for trial on September 11, 2014. K.W. filed his written jury request on August 20, 2014.  After a hearing on

2

September 2, 2014, the trial court found that K.W.'s request for a jury trial was untimely and denied it. The record shows that the bench trial took place on October 9, 2014.

We note that K.W.'s jury request was untimely under both the general rule and the specific order in this case. His jury request was filed less than thirty days before trial, making it untimely according to Rule 216, and less than sixty days before trial, making it untimely according to the trial court's scheduling order. *See* TEX. R. CIV. P. 216; *In re A.H.*, No. 12-10-00246-CV, 2011 WL 5166400, at *2 (Tex. App.—Tyler Oct. 31, 2011, pet. denied) (mem. op.). But even if there had been a proper jury request, K.W. waived any error because he failed to object when the trial court proceeded with a bench trial. *See In re K.M.H.*, 181 S.W.3d 1, 16 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *In re D.R.*, 177 S.W.3d 574, 580 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("[A] perfected right to a jury trial in a civil case may be waived by a party's failure to act when the trial court proceeds with a bench trial.").

Accordingly, we hold that the trial court did not abuse its discretion in denying K.W.'s request for a jury trial. We overrule K.W.'s first issue.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West 2014); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the first subsection of the statute. TEX. FAM. CODE ANN. § 161.001(1) (West 2014); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2) (West 2014); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of

proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied).

4

In his second issue, K.W. contends that the evidence is legally and factually insufficient to support a finding that termination of his parental rights is in the best interest of the children. In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

This list is not exhaustive, but simply indicates considerations that have been or could be pertinent. *Id.* However, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). The *Holley* test focuses on the best interest of the child, not the parent's best interest. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). We apply the *Holley* factors below.

**The Evidence**

Marion Barrera, a Department caseworker, testified that she had been the children's caseworker for almost one year. On October 16, 2013, the children were living with their mother, A.K., and their maternal grandmother. The Department removed them on that date because of allegations of abuse and neglect by A.K. and the maternal grandmother. However, Barrera admitted, there were no allegations against K.W. at that time, nor was he living in the household. In fact, when the children were removed, K.W.'s whereabouts were unknown. The Department located K.W. in November 2013 in the Van Zandt County jail. Barrera believed K.W. had been charged with burglary of a habitation.

Barrera stated that while K.W. was in jail, she took him the family plan of service. She explained to K.W. that the document was a family plan of service and that when he was released, the Department would set up services. She testified that they went through the family plan and talked about every service he was required to do. Barrera believed that K.W. understood the plan and signed the document. However, K.W. testified that he did not recall receiving a family

plan of service while he was in jail or when he was released from jail in April 2014. He admitted his signature was on a document that he signed while in jail, but denied that the document was the family plan of service. Instead, he explained that it was the documentation of the case against A.K. and her mother. He did not recall reading the document, and stated that no one told him he was signing a family plan of service.

K.W. stated that in February 2014, he received deferred adjudication for the offense of burglary of a building. His community supervision was revoked, however, because he failed to appear, and he admitted using methamphetamine. Thereafter, he committed another offense that he described as "escape while arrested," and was sentenced to three years of imprisonment. He also was sentenced to twelve months in state jail for the burglary of a building offense. At the time of trial, K.W. was incarcerated, and had served seven months of his three year sentence. He admitted that since the case began about a year ago, he had been incarcerated all but the month of April 2014.

When K.W. was released from jail in April 2014, he called the Department, but stated that he never received a response, any "papers," or a schedule for services. He stated that he attended Narcotics Anonymous and visited his children three or four times, the only requirements of the family plan of service that he participated in. Barrera testified that K.W. refused to submit to a drug test even though she told him that the refusal would constitute a positive drug test. According to K.W., he refused to take the drug test because he was going to a job interview at the time. He admitted that he had not paid child support since being ordered to do so as part of the family plan of service.

K. W. testified that on October 16, 2013, he knew the children were living with A.K. and their maternal grandmother. At that time, he said, he was living in Grand Saline, and working at a pool table service. He had last been involved with the children's mother, A.K., two years ago, and stated that they separated because of her use of illegal drugs, including methamphetamine. K.W. understood that the children were removed because A.K. and her mother were using drugs in the house with the children present. He visited the children every other day before they were removed by the Department, and stated that the children spent the night at his residence every two to three days. If he was not working, he would keep the children three to four days at a time. He would take them back to A.K. when he was working even though he knew she was using illegal drugs, including methamphetamine, while the children were in the house.

6

K.W. also knew that A.K.'s mother used drugs, including hydrocodone, Xanax, marijuana, and methamphetamine. He testified that when A.K. picked up the children, she seemed sober. However, if he showed up at her house unexpectedly to pick up the children, he could tell that A.K. was using methamphetamine. He admitted allowing the children to return to A.K.'s house when he knew or suspected A.K. or A.K.'s mother was intoxicated. K.W. explained that he had a job and that A.K.'s house was the only place to leave the children. He also stated that A.K.'s mother was involved in his escape because he hid from the police at her house. According to K.W., when his oldest child, K.W.1, was approximately two years old, her feet were burned. He was living with A.K., but denied being in the house when the incident occurred. He admitted that K.W. had been using drugs, hydrocodone and soma, without a prescription. According to testimony at trial, K.W.1 will need continuous surgeries to separate her toes as a result of her feet being burned.

K.W. stated that he is taking classes in the "Change" program, and attending Narcotics Anonymous in prison. He testified that after he is granted parole, his plan is to live with his father and brother in Quitman. But K.W. admitted that his father and brother have drug backgrounds and are currently on probation. He said that both of them go to church, are sober, and are employed. K.W.'s employment skills include welding and metal fabrication, and he said he could work with his father in a metal fabrication shop or with his brother on a land survey crew.

K.W. testified that he has a relationship with the children, they are bonded with him, and he is a very good father. He denied wanting permanent custody of the children, but instead, wanted them to be with his family until they could live with him. He expected to be granted parole in November or December 2014, and stated that the Department should wait for however long it took for him to "run through the hoops" to obtain the children.

According to the evidence, the children are doing well in the home of K.W.'s relatives, who are prospective adoptive parents. Barrera believed it would be in the children's best interest to terminate K.W.'s parental rights. She testified that K.W. was incarcerated, had no stable housing for the children, did not financially support the children, and used methamphetamine after he was released from jail in 2014. He also had a positive drug test because he refused to submit to drug testing. Barrera stated that K.W.'s instability, criminal background, and drug history made him an inappropriate parent for the children. The children's ad litem testified that

based on the fact that K.W. did not follow the family plan of service, the children did not need to live with him. She could not take the chance that K.W. would not get his life together.

**Analysis**

Viewing the evidence relating to the ***Holley*** factors in the light most favorable to the finding, we hold that a reasonable fact finder could have formed a firm belief or conviction that termination of K.W.'s parental rights is in the best interest of the children. However, K.W. points out that there is "scant" evidence regarding his drug history, there is no evidence that he failed to support his children when he was not incarcerated and had the ability to do so, and the evidence regarding his criminal history was his incarceration on three occasions during the pendency of the Department's case. Further, he said, he was not seeking custody or access to his children, but requested that his relationship not be severed so that he might be able to show that he was worthy of access to the children in the future. Although this evidence is contrary to the trial court's finding, it is not so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that terminating K.W.'s parental rights was in the best interest of the children. Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of K.W.'s parental rights is in the best interest of the children. Accordingly, we overrule K.W.'s second issue regarding the best interest of the children.

**DISPOSITION**

Having overruled all of K.W.'s issues, we ***affirm*** the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered February 27, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 27, 2015**

**NO. 12-14-00327-CV**

**IN THE INTEREST OF K. W. AND P. W., CHILDREN**

Appeal from the 294th District Court

of Van Zandt County, Texas (Tr.Ct.No. 13-00267)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*