# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00095-CV

---

### Kim I. Manning and April M. Hays, Appellants

### v.

### Manuel L. Flores, as Independent Executor of the Estate of Jeanne K. Manning, Deceased, Appellee

---

### FROM PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. C-1-PB-22-000103, THE HONORABLE GUY S. HERMAN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Following Jeanne K. Manning's death in November 2021, the independent executor for her estate sought to have her 2020 will probated.[1]  Jeanne's two stepchildren intervened in the case and argued that Jeanne's estate should be handled under a prior 1980 will and agreement.  The independent executor filed a traditional motion for summary judgment asserting that Jeanne's latest will was effective and should govern the handling of her estate and that the stepchildren's claims were barred by several defenses.  The trial court granted the independent executor's motion.  In four issues on appeal, the two stepchildren argue that the trial court erred by granting the independent executor's motion for summary judgment and by

---

[1] Because many of the people involved in this dispute are family members with the same surname, we will refer to the family members by their first names.

admitting evidence concerning an agreement among the parties. We will affirm the trial court's order granting the motion for summary judgment.

## BACKGROUND

In 1963, Jeanne married George Manning, who was an attorney. Prior to the marriage, Jeanne had a daughter, Janice, and George had a son, Kim, and a daughter, April. In 1980, Jeanne and George executed wills that mirrored one another's, entered into a contract concerning the wills, and created the Manning Trust. The wills stated that each spouse's share of the estate would be bequeathed to the Manning Trust. The contractual agreement specified that neither George nor Jeanne could amend their wills without the written consent of the other and that upon the death of one of the spouses, "the survivor . . . shall never have the right to amend or to execute any codicil to the Last Will and Testament of the survivor." The Manning Trust listed Janice, Kim, and April as the beneficiaries and gave each of them a one-third share of the trust. George died in 1988, and his estate was bequeathed to the Manning Trust. His son Kim was also an attorney and handled probating the will.

In 1995, Jeanne, Janice, Kim, and April entered into and signed an agreement (the "1995 Agreement") specifying that the 1980 contract and wills executed by Jeanne and George did not satisfy the requirements for a contractual will because the wills did not mention the existence of the contract or the contract's material terms as required by the governing statute in effect at the time. Further, the 1995 Agreement stated that all parties agreed that the 1980 contract had "no binding effect upon the manner in which Jeanne . . . might elect to dispose of the property which she owns upon her death, and that Jeanne . . . can dispose of such property in any way which she might deem appropriate." The 1995 Agreement also stated that Jeanne had

2

the unrestricted right to dispose of all the property that she owned at the time of her death without limitation. Under the 1995 Agreement, Janice, Kim, and April agreed to fully release and discharge Jeanne and her heirs, successors, and assigns from any and all liabilities, claims and demands, and causes of action in connection with the 1980 contract, with the provisions of Jeanne's will, and with the method of administration and disposition of her estate according to her will. Another provision of the 1995 Agreement specified that the parties mutually released each other from any and all liabilities, claims, demands, and causes of action that they had against any other party related to the 1980 contract. Similarly, the 1995 Agreement provided that the parties agreed to indemnify and hold harmless each of the remaining parties from any and all claims or causes of action that may ever be asserted by a person or entity based on any causes of action that were released through the 1995 Agreement.

In 2020, Jeanne executed a new will that left her estate to a trust for her daughter Janice. The will also stated that Jeanne's interest in the Manning Trust was not part of her estate and that the assets already in the trust would be distributed equally to Janice, Kim, and April. The will reflected that Jeanne was not leaving any of her estate to Kim or April but explained that "[t]his is not due to a lack of love or affection but is because they have been provided for by other planning done by me and my late husband during our lifetimes, specifically The Manning Trust." Under the terms of the will, Janice's husband, Manual Flores, was named as independent executor of Jeanne's estate.

After executing the will, Jeanne passed away in November 2021. A few months later, Flores as independent executor filed an application to probate Jeanne's will. Shortly thereafter, April and Kim filed a plea in intervention asserting that Jeanne and George executed contractual wills in 1980 that named the trustees of the Manning Trust as the beneficiaries of

3

their estates. In their petition, April and Kim acknowledged that they did not have a copy of Jeanne's will, but they submitted as an exhibit George's will that was filed in Bexar County after the will was probated along with a copy of the contractual agreement signed by George and Jeanne that was also filed in Bexar County along with George's will.

Approximately one year later, in February 2023, Flores filed a no-evidence motion for summary judgment arguing that April and Kim had not produced the will that Jeanne allegedly executed in 1980 or evidence of a written agreement to support their alleged contractual claims that complied with the requirements of the statute governing contractual wills in effect when the 1980 wills and contract were executed. In response a few days later, April and Kim filed a traditional motion for summary judgment, arguing that Jeanne entered into a binding contract when she executed her 1980 will and contract and that her 2020 will breached the contract. Attached to the motion were affidavits from April and Kim. Kim admitted that he had not found Jeanne's 1980 will but averred that he had seen the will and that it left her estate to the Manning Trust. Similarly, April stated that Jeanne's 1980 will left her estate to the Manning Trust.

In April 2023, the trial court's staff attorney emailed the parties informing them that the trial court intended to grant Flores's no-evidence motion and to deny April and Kim's traditional motion. A few weeks later in May 2023 before any orders issued, April and Kim filed a motion for reconsideration alleging that an additional search of George's old law firm resulted in Kim's discovery of a copy of Jeanne's 1980 will and the contract concerning the will. April and Kim attached to the motion the 1980 will and contract. Flores filed a response to the motion, arguing that the trial court should exclude the 1980 will because discovery in the case had ended in December 2022, because there was no good cause to excuse the delay in disclosure, and

4

because the admission would result in unfair prejudice and surprise. Following a hearing, the trial court denied Flores's no-evidence motion and April and Kim's traditional motion. Although no formal ruling on Flores's motion to exclude appeared in the record, the trial court's staff attorney emailed the parties, explained that the trial court had reviewed April and Kim's motion for reconsideration, and informed the parties that based on the admissible summary-judgment evidence, the court had decided to deny the two summary-judgment motions.

After Janice found the 1995 Agreement in one of the boxes containing Jeanne's belongings, Flores filed a traditional motion for summary judgment and amended his pleadings to assert claims and defenses pertaining to the 1995 Agreement. Specifically, in his September 2023 motion, Flores asserted that a recent search of Jeanne's belongings resulted in the discovery of the 1995 Agreement signed by Jeanne, Janice, Kim, and April and that the 1995 Agreement allowed Jeanne to dispose of her estate in any manner she wanted. Flores argued that the 1995 Agreement constituted a novation of the 1980 contract and invalidated it. Alternatively, Flores asserted that because the parties had entered into the 1995 Agreement, April and Kim's claims were barred by the defenses of release, quasi-estoppel, and waiver. Attached to the motion was an affidavit from Janice, who averred that she found the 1995 Agreement after again going through boxes containing Jeanne's paperwork and that she did not remember the Agreement until finding it.

April and Kim filed a response to the summary-judgment motion in which they acknowledged the execution of the 1995 Agreement but stated it was drafted because a lawyer told the family that the 1980 contract and wills did not meet the statutory requirements for a contractual will when they were executed. Further, they asserted that the 1995 Agreement was created to allow Jeanne to make a new will that would have left Janice's share of Jeanne's estate

5

to a new trust and that would have left April's and Kim's shares of Jeanne's estate to the Manning Trust. Kim submitted a declaration in which he stated that Jeanne consulted with a lawyer that he had previously used for estate planning for his biological mother, that the lawyer advised Jeanne that the 1980 contract was invalid, that the lawyer drafted the 1995 Agreement, and that Kim believed the 1995 Agreement was necessary to execute Jeanne and George's original intent as expressed in the 1980 contract and wills.

Additionally, although April and Kim acknowledged in their response that the 1980 contract and wills did not satisfy the statutory requirements for contractual wills when the documents were drafted, they argued that the statute was amended in 2003 and retroactively validated Jeanne's 1980 contract and will as a contractual will. Accordingly, they urged that the 1980 contract and will constituted a binding agreement, meaning that Jeanne's 2020 will was invalid and that Flores's summary-judgment motion should not be granted. Further, April and Kim contended that the 1995 Agreement did not qualify as a novation of Jeanne and George's prior agreement because not all of the parties to the original agreement signed the 1995 Agreement. Next, April and Kim asserted that the 1995 Agreement was obtained by fraudulent inducement because April and Kim were told their shares of Jeanne's estate would go to the Manning Trust. April and Kim insisted that they would not have signed the 1995 Agreement had they not been told that it was necessary to allow the original intent of George and Jeanne to be fulfilled.

Around the time that they filed their response, April and Kim also filed a motion to strike the 1995 Agreement. In their motion, they asserted that the 1995 Agreement was not produced until after the discovery period ended and repeated Flores's prior argument that the discovery period had ended in December 2022. Further, they argued that Flores did not show

6

good cause for why the 1995 Agreement was not timely disclosed and that the admission of the 1995 Agreement would result in unfair surprise and prejudice. In the motion, they admitted that all parties were aware of the 1995 Agreement but asserted that no one identified it for use in this case.

Flores responded to the motion to strike and to the response to his summary-judgment motion. Regarding the motion to strike, Flores argued that the trial court should deny the motion by asserting that good cause and lack of unfair surprise or prejudice justified the admission of the 1995 Agreement because Janice did not remember it until she found it, because she did not discover it until recently when she searched through Jeanne's property again, and because April and Kim admitted in their response that they were aware of the 1995 Agreement. Further, Flores asserted that April and Kim had previously argued that the discovery period was still open when they offered Jeanne's 1980 will for admission.

Concerning the response to his summary-judgment motion, Flores asserted that the 1995 Agreement was signed by all the necessary beneficiaries; that April and Kim did not present any arguments addressing his contentions that their claims were barred by release, quasi-estoppel, and waiver; and that those defenses provided independent grounds for summary judgment. Further, Flores noted that April and Kim mentioned in their response that the 1995 Agreement was fraudulently induced, but he emphasized that they did not present this claim in any live pleading and attached no summary-judgment evidence to support the claim.

Following a hearing, the trial court rendered orders denying April and Kim's motion to strike the 1995 Agreement and granting Flores's traditional motion for summary judgment.

**DISCUSSION**

In their first three issues on appeal, April and Kim assert that the trial court erred when it granted Flores's summary-judgment motion. In their fourth issue, April and Kim contend that the trial court erred by denying their motion to strike the 1995 Agreement and by admitting it into evidence. We will address April and Kim's fourth issue before turning to the issues challenging the summary-judgment ruling.

**Motion to Strike**

In their fourth issue, April and Kim assert that the trial court erred when it denied the motion to strike and admitted the 1995 Agreement because Flores did not disclose it during the discovery period. In presenting this claim, April and Kim argue that this case was governed by a Level 2 discovery control plan and that under that plan discovery ended in December 2022. *See* Tex. R. Civ. P. 190.3, 194.2. April and Kim emphasize that Flores did not provide the 1995 Agreement until September 2023. Moreover, although April and Kim acknowledge that trial courts may admit untimely disclosed discovery, they contend that the trial court should not have admitted the 1995 Agreement because the late disclosure was not excused by good cause or a lack of unfair surprise or prejudice. *See id.* R. 193.6. Further, April and Kim note that the 1995 Agreement formed the basis for the summary-judgment ruling.

Even assuming that the case was governed by a Level 2 discovery control plan and that the disclosure of the 1995 Agreement was untimely, we would be unable to sustain April and Kim's issue. Under the Rules of Civil Procedure, "[a] party who fails to make, amend, or supplement a discovery response . . . in a timely manner may not introduce in evidence the material or information that was not timely disclosed . . . unless the court finds" the following:

> (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or
>
> (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

*Id.*

"The party seeking to introduce the evidence has the burden of establishing good cause or the lack of unfair surprise or prejudice." *Syrian Am. Oil Corp., S.A. v. Pecten Orient Co.*, 524 S.W.3d 350, 366 (Tex. App.—Houston [1st Dist.] 2017, no pet.). "The trial court has broad discretion to determine whether the party has met this burden." *Id.* To demonstrate an abuse of discretion, the appellant must show that the trial court acted in an arbitrary or unreasonable manner, or without reference to guiding principles of law. *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.). In cases like this where a trial court admits evidence over an untimely discovery disclosure objection but makes no express findings, the appellate court will evaluate the trial court's implied findings for an abuse of discretion. *In re A.N.C.*, 679 S.W.3d 311, 321 (Tex. App.—San Antonio 2023, pet. denied).

As an initial matter, we note, as set out earlier, that April and Kim filed a signed copy of Jeanne's 1980 will, which Flores argued was filed past the discovery deadline, and April and Kim's explanation that the will was found only after a search of George's old office was similar to Flores's explanation concerning the 1995 Agreement. Moreover, concerning the 1980 will, Flores argued, like April and Kim do with respect to the 1995 Agreement, that there was no good cause for the delay and that the admission would result in unfair prejudice and surprise. After considering the parties' arguments and the copy of Jeanne's will, the trial court elected not to grant Flores's no-evidence motion for summary judgment, impliedly rejecting Flores's claims. When Flores sought to admit the 1995 Agreement, the trial court ruled consistently with its prior

9

implied ruling by admitting the 1995 Agreement and denying April and Kim's motion to strike. *See Lindley v. Johnson*, 936 S.W.2d 53, 56 (Tex. App.—Tyler 1996, writ denied) (explaining that to establish abuse of discretion in determining that good cause existed, "the complaining party must show that the trial court's action was arbitrary and unreasonable").

Additionally, Janice explained in two declarations that she did not remember the 1995 Agreement before discovering it and that she did not discover it until after she recently moved, compiled all of Jeanne's belongings, and searched through the belongings again. *Cf. Lopez v. Foremost Paving, Inc.*, 796 S.W.2d 473, 477 (Tex. App.—San Antonio 1990, writ dism'd) (determining that admission was erroneous where party failed to show that evidence "could not have been produced long beforehand"). Further, the 1995 Agreement was submitted as part of Flores's traditional motion for summary judgment just a few weeks after Janice said she discovered it through a search of Jeanne's belongings. *See Dyer v. Cotton*, 333 S.W.3d 703, 717 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (explaining that good faith efforts to locate "can support a finding of good cause").

Importantly, after Flores produced the 1995 Agreement, April and Kim admitted in their response and in their motion to strike that they were aware of the 1995 Agreement. *See Torres v. Caterpillar, Inc.*, 928 SW.2d 233, 243 (Tex. App.—San Antonio 1996, writ denied) (noting that "[t]he absence of surprise is [a] factor the trial court may consider" when evaluating if there is good cause). In fact, they admitted in their response to Flores's summary-judgment motion and in Kim's declaration that the 1995 Agreement was executed after a lawyer informed Jeanne that the 1980 contract and wills were not valid contractual wills.

Based on the preceding, we are unable to conclude that the trial court abused its discretion by impliedly finding that good cause existed to admit the 1995 Agreement and deny

10

April and Kim's motion to strike. *Cf. Dyer*, 333 S.W.3d at 718 (concluding that trial court did not abuse its discretion by determining that good cause existed, in part, because both parties were equally able to investigate and locate).

Accordingly, we overrule April and Kim's fourth issue on appeal.

**Summary Judgment**

In their first three issues, April and Kim argue that the trial court erred by granting Flores's motion for summary judgment. Appellate courts review de novo a trial court's ruling granting or denying a motion for summary judgment. *Sullivan v. Texas Ethics Comm'n*, 660 S.W.3d 225, 232 (Tex. App.—Austin 2022, pet. denied). In performing this review, appellate courts "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). "An appellate court may not reverse a trial court's judgment without properly assigned error." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 226 (Tex. 2022). "When a trial court's order granting summary judgment does not specify the grounds on which its order is based, the appealing party must negate each ground upon which the judgment could have been based." *Id.*

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." Tex. R. Civ. P. 166a(b). To prevail, the moving party must show that "there is no genuine issue as to any material fact" and that the moving party "is entitled to judgment as a matter of law on the issues." *Id.* R. 166a(c). A genuine issue of fact exists when the evidence rises to a level that would enable reasonable

11

and fair-minded people to differ in their conclusions on the issue.  *See Transcontinental Ins. Co. v. Briggs Equip. Tr.*, 321 S.W.3d 685, 692 (Tex. App.—Houston [ 14th Dist.] 2010, no pet.).

*Fraudulent Inducement*

In their first issue, April and Kim assert that the trial court erred by granting the motion for summary judgment because there was a genuine issue of material fact regarding whether the 1995 Agreement was the result of fraudulent inducement.  Specifically, April and Kim argue that Jeanne consulted with an attorney about protecting Janice's share of the estate and that the plan that was communicated to April and Kim was that Janice's share of Jeanne's estate would be transferred to a new trust and that April and Kim's shares would be transferred to the Manning Trust.  April and Kim contend that they signed the 1995 Agreement believing that this estate plan would occur but that instead Jeanne rewrote her will in 2020 that eliminated them as beneficiaries.  Further, April and Kim claim that Jeanne deliberately failed to disclose her true intentions for the estate to induce them to sign and that they would not have signed if they had known her plan.  For these reasons, April and Kim urge that there was a material factual dispute that should have precluded the trial court from granting Flores's motion for summary judgment.

As set out above, April and Kim mentioned fraudulent inducement in their response to Flores's summary-judgment motion but did not include it in their pleadings.  A party is "not required to guess what unpleaded claims might apply and negate them."  *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006).  "A summary judgment movant does not have a burden to develop summary judgment evidence and present argument addressing unpleaded claims."  *MedStar Funding, LC v. Willumsen*, 650 S.W.3d 809, 813 (Tex. App.—Houston

12

[14th Dist.] 2022, no pet.). "Moreover, a claim raised for the first time in a non-movant's summary judgment response does not become part of the live pleading that the movant must disprove in order to prevail." *Id.* "If, in response to a summary judgment motion, a claimant desires to assert additional claims, then it may file an amended pleading asserting new claims before the hearing without leave, or thereafter and before judgment with the court's permission." *Id.* at 813-14 (citing Tex. R. Civ. P. 166a(c)). When claims are made for the first time in a summary-judgment response, the movant may either "object that the claim was not pleaded" or "respond on the merits and try the issue by consent." *Roberts v. Wells Fargo Bank, N.A.*, 406 S.W.3d 702, 707 (Tex. App.—El Paso 2013, no pet.).

Although April and Kim asserted that the 1995 Agreement was obtained by fraudulent inducement, they did so only in their response to Flores's motion for summary judgment. *See* Tex. R. Civ. P. 94 (requiring pleading of affirmative defenses); *see also Casa Palmira, LP v. Taylor Child Care, LP*, 632 S.W.3d 11, 21 (Tex. App.—El Paso 2020, no pet.) (noting that fraudulent inducement can be affirmative defense). Moreover, after April and Kim made the claim, Flores asserted in his response that fraudulent inducement was not raised in any live pleading. *See John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 655 (Tex. App.—Dallas 2013, pet. denied) (explaining that party can object in written response or before rendition of judgment to lack of pleading for affirmative defense presented in response to motion for summary judgment). Similarly, during the hearing on Flores's motion for summary judgment, Flores argued that April and Kim had not filed a live pleading raising fraudulent inducement. Accordingly, we conclude that Flores objected to the lack of pleading and was not required to disprove fraudulent inducement to be entitled to summary judgment. *See RE/MAX of Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 328 (Tex. App.—Houston [1st Dist.] 1997, pet.

13

denied) ("[Trial by consent] is not intended to establish a general rule of practice and should be applied with care, and in no event in a doubtful situation").

For these reasons, we conclude that April and Kim failed to raise an issue of material fact concerning fraudulent inducement and, therefore, overrule their first issue on appeal. *See International Shelters, Inc. v. Corpus Christi State Nat'l Bank*, 475 S.W.2d 334, 336 (Tex. App.—Corpus Christi-Edinburg 1971, no writ) (explaining that, in general, "an affirmative defense must be both pled and supported by evidence to make out a fact issue"); *see also Jones v. Wal-Mart Stores, Inc.*, 893 S.W.2d 144, 147 (Tex. App.—Houston [1st Dist.] 1995, no writ) (concluding that claim for intentional tort not properly before trial court when it granted summary judgment because claim was only mentioned in response to motion for summary judgment).

*Retroactive Validation of 1980 Contract and 1995 Agreement as Novation*

In their second issue on appeal, April and Kim assert that the trial court erred by granting summary judgment because Jeanne's 1980 will and contract constituted a valid and enforceable contractual will. When presenting this issue, they acknowledge that the will did not mention the existence of the contract or its material terms even though the statutory provision governing contractual wills then in effect required that. *See* Act of May 17, 1979, 66th Leg., R.S., ch. 713, § 10, sec. 59A, 1979 Tex. Gen. Laws 1740, 1746. However, they contend that a statutory amendment made in 2003 allowed for a contractual will to be effective through "a written agreement that is binding and enforceable" and argue that the amendment retroactively applied and rendered the 1980 will and contract a valid and enforceable contractual will. *See* Tex. Est. Code § 254.004.

14

Building on the preceding foundation, April and Kim argue in their third issue that summary judgment should not have been granted because the 1995 Agreement could not have been a novation of the original 1980 contractual will. As support, they highlight that the parties who signed the 1995 Agreement differed from those who signed the 1980 contract and contend that a novation cannot occur when one of the original parties to an agreement has died. Additionally, they assert that the 1995 Agreement could not be a novation because the beneficiary of the 1980 contractual arrangement was the Manning Trust but the parties to the 1995 Agreement signed in their individual capacities rather than as trustees of the Manning Trust. Similarly, they emphasize that the children of April, Kim, and Janice did not sign the 1995 Agreement even though they were contingent beneficiaries. Accordingly, April and Kim contend that Jeanne's enforceable 1980 contractual will could not be invalidated by the 1995 Agreement and that Flores could not "invoke a novation argument to negate" Jeanne's obligation under her 1980 contractual will. For these reasons, April and Kim urge that the trial court erred by granting summary judgment.

In addition to the novation claim, Flores asserted that he was entitled to summary judgment on the following grounds independent of whether the 1995 Agreement was a novation and Jeanne's 1980 contract and will were retroactively made into an enforceable contractual will: (1) April and Kim agreed to release all of their rights and claims pertaining to Jeanne's estate by executing the 1995 Agreement; (2) quasi-estoppel barred their claims due to April and Kim's taking a position inconsistent with their having executed the 1995 Agreement; and (3) they waived their rights to enforce the 1980 contract and will by executing the 1995 Agreement. Moreover, when granting summary judgment, the trial court did not specify on which grounds the summary judgment was based. When arguing on appeal that the trial court should not have

15

granted Flores's summary-judgment motion, April and Kim do not argue that summary judgment could not have been granted on the three other grounds summarized above. *See Agarwal v. Villavaso*, No. 03-16-00800-CV, 2017 WL 3044545, at *4 (Tex. App.—Austin July 13, 2017, no pet.) (mem. op.) (noting that appellants had "the burden of challenging all possible summary judgment grounds on appeal").

If multiple grounds for summary judgment are raised and if the trial court does not specify the ground or grounds relied on for its ruling, "[t]he appealing party must show that none of the proposed grounds is sufficient to support the judgment." *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 831 (Tex. App.—Dallas 2014, no pet.). "If an appellant does not challenge each possible ground on which summary judgment could have been granted, we must uphold the summary judgment on the unchallenged ground" or grounds. *Id.* at 832. Because April and Kim have not challenged all the grounds on which the summary judgment could have been granted, we uphold the trial court's ruling on those unchallenged grounds. *See Rosetta Res. Operating*, 645 S.W.3d at 226; *Neira v. Scully*, No. 04-14-00687-CV, 2015 WL 4478009, at *3 (Tex. App.—San Antonio July 22, 2015, no pet.) (mem. op.).

For these reasons, we overrule April and Kim's second and third issues on appeal.

## CONCLUSION

Having overruled all of April and Kim's issues on appeal, we affirm the trial court's final order granting summary judgment in favor of Flores.

 

 

_____

Karin Crump, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed

Filed:   May 15, 2025